UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLAYTON DIAZ                                  CIVIL ACTION

VERSUS                                        NO. 07-2805

SUPERIOR ENERGY                               MAGISTRATE JUDGE
SERVICES, LLC                                 JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

Plaintiff, Clayton Diaz, filed this pro se action against his former employer, Superior Energy Services, L.L.C., alleging that he was demoted and ultimately discharged from his employment in retaliation for his complaints to Superior's management about alleged safety, legal and regulatory violations.  He brings a retaliation claim under the Louisiana Whistleblower Statute.  La. Rev. Stat. § 23:967. Diaz also alleges vaguely that Superior violated unspecified federal laws by conspiring to influence a United States Coast Guard inspector; deceiving Coast Guard inspectors; failing to document exposure of employees to hazardous materials; violating Homeland Security rules and regulations; conspiring with competitors to fix the day rates of lift boats; restraining trade; and violating the Securities and Exchange Commission ("SEC") and Federal Trade Commission ("FTC") laws.  He also brings a state law claim for breach of his alleged employment contract.  Petition for Damages, attached to defendant's Notice of Removal, Record Doc. No. 1.

Superior filed a motion for summary judgment to dismiss all of plaintiff's claims. The motion is supported by the complete transcript of plaintiff's deposition, excerpts from deposition transcripts of other witnesses, several exhibits that were authenticated during the various depositions, and five exhibits that were neither sworn nor certified as required by Fed. R. Civ. P. 56(e).  Record Doc. No. 93.

Without seeking leave to do so, plaintiff filed a timely opposition memorandum that exceeds the court's 25-page limit by 20 pages.  Local Rule 7.8.1E.  Nonetheless, the court has considered the entire memorandum.  Diaz supported his opposition with excerpts from deposition transcripts, some of the same certified exhibits that defendant attached to its memorandum and numerous uncertified exhibits.  Record Doc. No. 101.

The court ordered both parties to verify any uncertified exhibits that they wanted the court to consider.  Record Doc. No. 103.  Superior submitted declarations under penalty of perjury and additional deposition transcripts, verifying the authenticity of its Exhibits 4 through 8.  Record Doc. No. 107.  Plaintiff submitted his own declaration under penalty of perjury, stating that all the exhibits he submitted were obtained from defendant through discovery or from his own files and were authentic.  Record Doc. No. 111.

Diaz received leave to file a Supplement to Memorandum in Opposition of Defendant's Motion for Summary Judgment.  Record Doc. Nos. 111, 113, 114.  Superior

filed a reply memorandum in support of its motion for summary judgment, without seeking leave of court to do so.  Record Doc. No. 112.  Nonetheless, the court has considered defendant's reply memorandum.

After defendant's motion for summary judgment was submitted, Diaz filed a Motion to Compel defendant to answer his fifth set of written discovery requests.  Record Doc. No. 106.  The court granted plaintiff's motion for an expedited hearing on his motion to compel.  Record Doc. Nos. 104, 105.  Superior filed a timely memorandum in opposition to plaintiff's motion to compel.  Record Doc. No. 110.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that plaintiff's motion to compel is **DENIED**.  All parties have previously consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Record Doc. No. 27.  As discussed below, **IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DISMISSED AS MOOT IN PART** insofar as plaintiff has not asserted a federal qui tam claim in this action.  **IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** as to all of plaintiff's claims in this action.

## I.   PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Diaz moved to compel responses to his Fifth Request for Production of Documents and Fifth Request for Answers to Interrogatories.  Record Doc. No. 106.  He avers in his memorandum in support of his motion that he delivered these requests to defendant's counsel on June 9, 2008.[1]  Superior admits that it received plaintiff's Fifth Request for Production of Documents on that date, but denies that it received his Fifth Request for Answers to Interrogatories until July 7, 2008.

However, even assuming that Diaz delivered both sets of discovery requests on June 9, 2008, defendant's responses were not due until 30 days later, or on July 9, 2008, which was two days _after_ the court-ordered discovery deadline of July 7, 2008.  Record Doc. No. 31.  Therefore, Superior was not required to respond to any of plaintiff's untimely discovery requests, unless plaintiff establishes "good cause" as required by Fed. R. Civ. P. 16(b) to extend the discovery deadline previously imposed by the court. Considering the four factors that must be evaluated to determine whether "good cause" has been shown, S & W Enters., L.L.C. v. South Trust Bank of Ala., NA, 315 F.3d 533, 535 (5th Cir. 2003), I find that Diaz has offered no persuasive or acceptable reason for his delay in pursuing this discovery, which is unimportant and which would prejudice

---

[1]The certificates of service on the copies of plaintiff's discovery requests that are attached to his motion to compel state that the discovery requests were served on June 9, 2008, but the certificates of service are unsigned and the court does not rely on them.  Plaintiff's Exhs. 1, 2.

defendant in its ability to prepare for trial and other dispositive proceedings, including the pending motion for summary judgment, at this extremely late date in these proceedings. No trial continuance has been requested. Ample time and opportunity has been provided to plaintiff to conduct and complete discovery, and he has in fact engaged in substantial discovery. "Good cause" to extend the discovery deadline for this discovery has not been shown. To the extent that Superior voluntarily responded to plaintiff's Fifth Request for Production of Documents despite the untimeliness of the requests, all of its objections to making any additional responses are sustained.

Accordingly, for all of the foregoing reasons, plaintiff's motion to compel is DENIED.

II.   <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

A.   <u>The Undisputed Facts for Summary Judgment Purposes</u>

The following facts are undisputed for purposes of the pending motion for summary judgment.

Superior's Marine Division operates and provides lift boats to its customers in the Gulf of Mexico. Diaz began working for Superior's Marine Division in August 2001 as an able-bodied seaman. In 2002, he was promoted to Mate.

Plaintiff signed an at-will employment acknowledgment form in March 2004. He knew and understood at that time that he "could be terminated at any time for any reason

or no reason." He never received anything to change his at-will status. Defendant's Exh. 1, deposition of Clayton Diaz at p. 84; Exh. 7 to Diaz deposition, At-Will Employment Acknowledgment Form.

In July 2004, Diaz was working on a vessel that was chartered to Superior's customer, British Petroleum ("BP"), when the vessel allided with an offshore platform. Diaz composed on his laptop computer a letter, addressed to BP, about his safety concerns related to the allision.[2] His laptop computer was kept aboard the vessel in the bridge, where it was used by other Superior employees at times. Diaz testified that he never sent the letter to BP, but that the captain of the vessel found the draft letter on his computer and sent a copy of it to Superior Marine Division's Operations Manager, Jason Bergeron. Bergeron, believing that Diaz had already sent the letter to BP, responded by sending his own letter to BP that addressed the concerns raised by Diaz's letter. Defendant's Exh. 1, Diaz deposition at pp. 113-14, 137, 163-64, 166, 169-71; Defendant's Exh. 2, deposition of Jason Bergeron at pp. 30-33.

When BP subsequently asked that Diaz be removed from its vessel, Superior reassigned him to another vessel. Although Diaz initially viewed the reassignment as a punishment, he ultimately agreed that it was "for the best" and he requested a transfer to

---

[2]Plaintiff's disk drive no longer contains the letter. Neither party has found a hard copy of the letter, but they agree generally that it documented plaintiff's concerns about safety issues following the allision. Defendant's Exh. 1, Diaz deposition at p. 113.

a different vessel where he could work longer hitches, for financial reasons. Defendant's Exh. 1, Diaz deposition at pp. 170-72; Exh. 11 to Diaz deposition, letter from Diaz to Dwayne Boudreaux dated July 20, 2004. Plaintiff retained the same job title and employment benefits following his transfer.

Bergeron and Human Resources Manager Dwayne Boudreaux met with Diaz after Bergeron saw the letter addressed to BP. Bergeron told plaintiff that he was concerned that Diaz had not reported the problems to Superior before writing a complaint letter to its customer. Bergeron told Diaz that he did not want him to stop being safety conscious, but asked him to learn how to interact better with Superior's contractors and clients. Defendant's Exh. 1, Diaz deposition at pp. 113-14, 165-67; Exh. 11 to Diaz deposition, July 20, 2004 letter from Diaz to Boudreaux; Defendant's Exh. 2, Bergeron deposition at pp. 29-30.

Shortly after his reassignment, Diaz issued a "stop work authority," which shut down the vessel's operations and ordered the vessel back to shore for a safety inspection. Defendant's Exh. 1, Diaz deposition at pp. 108, 183. Superior gave Diaz two days off and asked him to attend a meeting to discuss the incident when he returned to work. Defendant's Exh. 1, Diaz deposition at pp. 181, 185.

In anticipation of the meeting, Diaz wrote a letter that described 26 perceived deficiencies in the vessel. He gave the letter to several managers, including Bergeron and

Boudreaux, at the meeting.  Exh. 14 to Diaz deposition, letter from Diaz to Superior dated July 28, 2004.  Diaz felt that he was given a "Strike II" warning during that meeting, with the BP incident having been his Strike I.  On July 29, 2004, he prepared a letter of resignation.  Defendant's Exh. 1, Diaz deposition at p. 188; Exh. 15 to Diaz deposition, letter from Diaz to Superior.

The next day, Diaz met with Bergeron and Boudreaux, who addressed plaintiff's concerns about his employment and encouraged him not to quit.  Diaz decided not to resign and did not deliver the resignation letter to anyone.  Defendant's Exh. 1, Diaz deposition at pp. 152, 189-90.

In September 2004, Diaz was assigned to work in the shipyard for Superior, with the same job title, pay and benefits as when he worked on offshore vessels.  He never told anyone at Superior that he did not want to work in the shipyard, and he was never asked to leave the shipyard position.  Defendant's Exh. 1, Diaz deposition at pp. 73, 191-95; Defendant's Exh. 2, Bergeron deposition at pp. 11, 109-10.

In January 2006, Diaz was assigned to work in another shipyard, where Gary Thibodaux was the Project Manager.  Defendant's Exh. 2, Bergeron deposition at pp. 10-11, 13-14.  Diaz testified that Thibodaux, on behalf of Superior, entered into an employment contract with him when Thibodaux promised Diaz that he could accept a "management" position at the shipyard for one year, but that he could go back on the

boats as a Mate after that year.  Diaz knew, based on the employment manual that he had

received in 2004, that Thibodaux had no authority to make such a promise and that only

Superior's Chief Executive Officer ("CEO") had the authority to enter into an agreement

on the company's behalf.  Defendant's Exh. 1, Diaz deposition at pp. 44-45, 84-87, 90.

Thibodaux did not remember having any such conversation with Diaz.  Thibodaux

denied that he had hired plaintiff as his assistant manager or into a management position.

Diaz was not assigned to be the direct supervisor or boss of anyone.  Defendant's

Exh. 10, deposition of Gary Thibodaux at pp. 29-30, 32-33, 35-36, 73-74.

Diaz worked at the second shipyard until March 20, 2006, when he gave a letter

to Boudreaux.  Defendant's Exh. 1, Diaz deposition at p. 205; Diaz deposition Exh. 17,

letter from Diaz to Superior.  In the full-page, single-spaced, typed letter, he severely

criticized Superior's management but did not describe any specific incidents or legal or

regulatory violations.  Diaz's letter did not indicate in any way that he had reported or

intended to report any alleged violations to any legal or regulatory authority.

The parties dispute whether Diaz's letter was a resignation letter.  As to

resignation, the letter stated, in pertinent part:

> I am giving you notice of my intent to seek employment with a
> different marine company.  When I find a new job, I will give you a full
> two weeks notice.  I hope and expect Superior will give me a good
> recommendation, when contacted by prospective employers.

> . . . . I am very dissatisfied with the management of this division. . . .
> But there comes a time when enough is enough, and its [sic] time to move
> on. . . . I am embarrassed to call myself a Superior manager and employee
> . . . . [We] . . . look like a second rate company. . . . [W]e look like a joke.
> I hope to attain a management position with another company, or I
> may just go back to the boats. Either way, with Superior management the
> way it is, there is no use staying with Superior. . . . Feel free to contact me
> at any time in the future.

Exh. 17 to Diaz deposition.

After writing the letter, plaintiff requested two days off, which Boudreaux granted. They agreed to meet to discuss the letter when Diaz returned to work. Defendant's Exh. 1, Diaz deposition at pp. 204-06; Defendant's Exh. 3, deposition of Dwayne Boudreaux at pp. 15-16.

Boudreaux then discussed the letter with Bergeron. Both men testified that they interpreted the letter as a resignation letter, that they decided not to talk Diaz out of quitting and that they agreed to accept his resignation immediately.

Boudreaux and Thibodaux met with Diaz on March 23, 2006. Plaintiff testified that Boudreaux told him at that meeting that he was fired. Defendant's Exh. 1, Diaz deposition at pp. 207-08. Boudreaux denied telling Diaz that he was fired. Defendant's Exh. 3, Boudreaux deposition at p. 19. Thibodaux testified that Boudreaux "accepted Clayton's resignation" and that he did not recall Boudreaux saying that Diaz was fired. Defendant's Exh. 9, Thibodaux deposition at pp. 71-72.

Boudreaux prepared paperwork for the company, which stated that Diaz's termination was voluntary.  Defendant's Exh. 2, Bergeron deposition at pp. 110-12; Defendant's Exh. 3, Boudreaux deposition at pp. 16-19; Defendant's Exh. 4, Termination Notice dated March 23, 2006; Defendant's Exh. 5, Separation Notice Alleging Disqualification dated March 23, 2006.

Diaz testified that he did not intend to quit immediately when he wrote the letter. He testified that he intended to leave Superior only

> if I found a comparable management position; and if I could not find one, I would go back to the boats.  In other words, I would use my option to go back to work for the fleet at Superior instead of going to work for the fleet with another company. . . .  I was going to find out if [Superior's competitors] had any comparable management positions, and I intended to take anywheres [sic] from six months to a year to do this.

Defendant's Exh. 1, Diaz deposition at pp. 202-03.

Diaz cites the following testimony from Boudreaux and Bergeron to support his contention that he was actually fired, rather than resigning.

Bergeron testified as follows:

> Dwayne Boudreaux called me, and I believe we met, that he wanted to share the letter that he had received from Clayton.  And basically at that point, we both read it, evaluated it, and felt that it was more or less a letter of resignation and chose to accept that without any notice.
> Basically, what it said, to my knowledge, was that as soon as he found other employment he had every intention of leaving Superior Energy Services' employment, he would give us a two-week notice, which at that

point if he did not–if he felt that strongly and chose to resign, we would accept his resignation at that moment.

Defendant's Exh. 2, Bergeron deposition at pp. 110-11.

Boudreaux testified as follows:

A:  Basically, based upon the letter, Jason and I discussed it.  Prior to that you[3] had tried to quit a couple of times, and we felt that maybe you weren't happy here and it was time for you to go.
Q:  So you're stating that y'all thought it was time for me to go?
A:  That's correct.  Based upon your letter of resignation, it was time for you to go.
Q:  Now, was that your determination or Jason's determination or y'all came together in conjunction with that determination?
A:  I think we both felt that way, based upon the way the letter stated.

Defendant's Exh. 3, Boudreaux deposition at pp. 18-19.

Plaintiff argues that Bergeron admitted that Diaz intended to resign only after he found other employment, and that Boudreaux's testimony that "it was time for you to go" means that Superior decided to fire him, not that he resigned voluntarily.

For purposes of the pending motion for summary judgment, the court cannot make credibility determinations to resolve this conflict in the evidence, if indeed it is a material conflict, over whether Superior accepted plaintiff's resignation or fired him.  For summary judgment purposes <u>only</u>, therefore, construing this factual controversy in the

_____

[3]Diaz, proceeding pro se, asked the questions at Boudreaux's deposition.

light most favorable to Diaz, the nonmovant, the court will assume the truth of his contention that he was fired on March 23, 2006.

On April 1, 2006, Diaz began working for Montco as a Mate at a higher rate of pay than he had been receiving at Superior.  On June 27, 2006, he was diagnosed with a medical condition.  He was eventually determined to be disabled from working as a result of that medical condition.

On February 11, 2007, Diaz wrote to Superior.  His letter asserted that it had been "clearly understood" and "agreed upon between" him and "project manager Gary Boudreaux [sic]"[4] in January 2006 that he could return to work in the fleet if the shipyard job did not work out.  He stated that his employment had been terminated and he had not been given the opportunity to return to the fleet when he had expressed his concerns about Superior management's attitude and practices in March 2006.  He requested a meeting "to avoid legal recourses [sic]" and "resolve this matter in an amicable manner." Defendant's Exh. 8, letter from Diaz to Superior dated February 11, 2007.

Diaz filed the instant action in state court on March 22, 2007.  Superior removed the action to this court based on federal question jurisdiction and supplemental jurisdiction over plaintiff's state law claims.  Record Doc. No. 1, Notice of Removal.

---

[4]The project manager at the shipyard was Gary Thibodaux.

B.     Standard of Review for Summary Judgment Motions

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other

facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

C.      Plaintiff Fails to Provide Evidence to Support All Elements of his Louisiana
        Whistleblower Statute Retaliation Claim

Diaz contends that Superior wrongfully terminated him in violation of La. Rev. Stat. § 23:967, commonly known as the Louisiana Whistleblower Statute.  Superior argues that plaintiff cannot produce evidence to establish any essential element of this statute.  Superior's argument is well founded.

"The Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices."  Accardo v. Louisiana Health Servs. & Indem. Co., 943 So. 2d 381, 383 (La. App. 1st Cir. 2006).  The statute provides, in relevant part:

> A.  An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>     (1)  Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>     . . . .
>     (3)  Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967.

To survive summary judgment on his whistleblower claim, Diaz

> must establish that (1) [his employer] violated the law through a prohibited workplace act or practice; (2) [he] advised [his employer] of the violation; (3) [he] then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) [he] was fired as a result of [his] refusal to participate in the unlawful practice or threat to disclose the practice.

> Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of [his employer].

Hale v. Touro Infirmary, 886 So. 2d 1210, 1216 (La. App. 4th Cir. 2004).

For the following reasons, Diaz has not carried his burden under Fed. R. Civ. P. 56(c) to produce evidence that demonstrates a genuine issue of material fact as to any of the elements of his whistleblower claim.  Thus, even if Superior fired Diaz, which the court will assume to be true solely for purposes of the pending motion for summary judgment, his wrongful termination claim must be dismissed.

As to the first prong of the test, it is not sufficient "that the employee reasonably believes [the employer's action] is a violation of law. . . .  [The statute] requires an employee to prove an actual violation of state law in order to prevail on the merits of the case."  Accardo, 943 So. 2d at 386-87 (quotation and citation omitted) (emphasis added); accord Beard v. Seacoast Elec., Inc., 951 So. 2d 1168, 1170 (La. App. 4th Cir.), writ denied, 955 So. 2d 686 (La. 2007); Price v. B & B Transp. Servs., Inc., No. 2006 CA 1482, 2007 WL 1300932, at *2 (La. App. 1st Cir. 2007); Fondren v. Greater New Orleans Expressway Comm'n, 871 So. 2d 688, 691 (La. App. 5th Cir. 2004).  Diaz bears the burden of proving that defendant actually violated state law.  Stevenson v. Williamson, 547 F. Supp. 2d 544, 558 (M.D. La. 2008) (Parker, J.) (citations omitted).

Furthermore, the Whistleblower Statute covers only violations of state law and does not apply to violations of federal law.  Beard, 951 So. 2d at 1170.

Diaz argues that he satisfies the first prong of the Hale test because Superior allegedly violated La. Rev. Stat. § 23:13, which is a part of the Louisiana Workers' Compensation Law.  That statute provides:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein.  They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

La. Rev. Stat. § 23:13.

"In Louisiana, we employ a duty-risk analysis to determine whether a party is liable for its negligence given the particular facts of the case," including whether an employer has violated Section 23:13.  Guidry v. Coregis Ins. Co., 896 So. 2d 164, 177, 178 (La. App. 3d Cir. 2004) (citation omitted).  The duty-risk "analysis consists of four elements: namely, whether the defendant owed the plaintiff a duty of care; and if so, whether that duty encompassed the particular risk of harm the plaintiff suffered; whether the defendant breached that duty; and if so, whether the breach was a cause-in-fact of the plaintiff's

injuries." Id. at 177 (citation omitted); accord O'Connor v. Litchfield, 864 So. 2d 234, 239 (La. App. 1st Cir. 2003); Graves v. Gillyard, 835 So. 2d 1, 2 (La. App. 2d Cir. 2002).

In the instant case, Superior owed its employees the duty "to do everything reasonably necessary to protect the life, health, safety, and welfare of its employees. This includes providing proper safety devices and safeguards to render the employment safe, considering the normal hazards of such employment." Guidry, 896 So. 2d at 178-79 (citing La. Rev. Stat. § 23:13).

Diaz has proffered no evidence that Superior's duty encompassed any particular risk of harm suffered by any employee, that Superior actually breached that duty and that Superior's breach was a cause-in-fact of injury to any employee. Diaz has produced only his own speculative, conclusory allegations that Superior actually violated Section 23:13. This kind of "evidence" is insufficient to defeat summary judgment. See Richardson v. Oldham, 12 F.3d 1373, 1378-79 (5th Cir. 1994) (conclusions, conjecture not based on personal knowledge, and insufficient factual specificity are not competent summary judgment evidence); accord Crawford v. United States Dep't of Homeland Sec., 245 Fed. Appx. 369, 2007 WL 2348661, at *7 (5th Cir. 2007), cert. denied, 128 S. Ct. 2487 (2008); Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004); Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002); Robinson v. MINACT, Inc., NO. 05-0877, 2007 WL

2874602, at *4 (W.D. La. Sept. 27, 2007) (Stagg, J.).  Therefore, plaintiff has not carried

his burden to create a triable fact issue that Superior actually violated state law.

Diaz's "complete failure of proof concerning" the actual violation prong of the

Hale test, which is "an essential element of [his] case," means that he cannot prove his

wrongful termination claim under the Louisiana Whistleblower Statute.  Celotex, 477 U.S.

at 323; Hale, 886 So. 2d at 1216.  Although the court need not examine the other prongs

of the test when plaintiff fails to prove any essential element, additional analysis reveals

that he is similarly unable to prove the other essential elements of his case.

As to the second prong of the test, Diaz must produce evidence that he advised

Superior of an actual violation of Louisiana law.  However, he testified that he never

advised anyone at Superior during his employment that it was violating Louisiana law.

> And no, I don't believe I made any complaints of nonadherence to Louisiana
> law. . . .  I didn't make a reference to specific statute or law.  But I made a
> reference that the work environment was not as safe as it could be, which is
> a violation of Louisiana law. . . .  But did I come out and say, Hey, you're
> violating a Louisiana law, no, I didn't state that.

Defendant's Exh. 1, Diaz deposition at pp. 148-49.  Diaz's conclusory allegation that "the

work environment was not as safe as it could be, which is a violation of Louisiana law,"

establishes neither an actual violation of law under the duty-risk analysis discussed above,

nor that he advised Superior of such a violation.  Accordingly, plaintiff has failed to carry

his burden to establish a genuine issue of material fact concerning the second prong.

Because Diaz never advised Superior of any actual violation of Louisiana law, he cannot prove that he "<u>then refused</u> to participate in the prohibited practice or threatened to disclose the practice." <u>Hale</u>, 886 So. 2d at 1216 (emphasis added). He thus fails to demonstrate the third prong of the test.

Finally, Diaz has not provided any competent summary judgment evidence that he "was fired <u>as a result</u> of [his] refusal to participate in the unlawful practice or threat to disclose the practice." <u>Id.</u> (emphasis added). The undisputed facts reveal that his employment with Superior terminated as a direct result of his March 19, 2006 letter. In that letter, he stated that he was "very dissatisfied" with Superior, was embarrassed to work for Superior because it was "a second rate company" and "a joke," and intended to seek a job with one of its competitors. Exh. 17 to Diaz deposition. Boudreaux and Bergeron decided not to allow Diaz to remain with Superior for an indefinite period (which he predicted would be six to twelve months) while he interviewed with its competitors and openly criticized the company, when he had already told them that "enough is enough," it was time for him "to move on" and "there is no use staying with Superior." Boudreaux and Bergeron decided, in their words, to accept his resignation immediately or, as he contends, to fire him, rather than wait for this "very dissatisfied" employee to give them two weeks notice at some unspecified future date.

Confirming his inability to produce any evidence of causation to satisfy the fourth prong of the <u>Hale</u> test, Diaz testified that he had no evidence that he was terminated <u>in retaliation</u> for whistleblower activity, other than his letter and his word against Boudreaux's.   Defendant's Exh. 1, Diaz deposition at p. 258.   The only difference between plaintiff's and Boudreaux's accounts of events is that plaintiff says he was fired, while Boudreaux says he resigned.   Resolving that factual controversy in plaintiff's favor solely for summary judgment purposes, I find that nothing in the record indicates that Diaz was fired <u>as a result</u> of his refusal to participate in an unlawful practice or his threat to disclose the practice.   The only other evidence he cites is his letter, which was the immediate cause of his termination, but which did <u>not</u> cite any specific legal or regulatory violations in which he refused to participate nor suggest that he had reported or intended to report any alleged violations to any legal or regulatory authority.   Plaintiff's speculative, conclusory allegations are insufficient to establish retaliation for whistleblower activity.

Plaintiff's failure to satisfy his evidentiary burden as to any one of the prongs of the <u>Hale</u> test defeats his retaliation claim.   Because he has failed to carry his burden as to all of the elements, Superior is entitled to judgment in its favor as a matter of law on plaintiff's wrongful discharge claim under the Louisiana Whistleblower Statute.

### D.   Plaintiff's State Law Retaliation Claims Arising Before March 22, 2006 Are Time-Barred

Plaintiff's complaint and opposition memorandum assert instances of allegedly retaliatory treatment by Superior that occurred more than one year before his complaint was filed in state court on March 22, 2007.  Superior correctly argues that any state law cause of action based on these alleged occurrences is time-barred.

Claims based on violation of the Louisiana Whistleblower Statute prescribe one year from the date when plaintiff knew of the violation.  Lesikar v. Frymaster, L.L.C., No. 04-0786, 2005 WL 3359178, at *3 n.4 (W.D. La. Dec. 8, 2005) (Walter, J.); Johnson v. Harrah's Entertainment, Inc., No. 04-331, 2005 WL 3541139, at *5 (E.D. La. Nov. 16, 2005) (Knowles, M.J.); Langley v. Pinkerton's Inc., 220 F. Supp. 2d 575, 581 (M.D. La. 2002) (Parker, J.); Nolan v. Jefferson Parish Hosp., 790 So. 2d 725, 733 (La. App. 5th Cir. 2001).

Thus, any retaliation claim based on incidents that occurred more than one year before March 22, 2007 are time-barred, including Diaz's transfer to another vessel in July 2004, his transfer to shipyard work in September 2004, his transfer to a second shipyard in January 2006 and any alleged loss of pay or benefits prior to March 22, 2006.  Superior is entitled to summary judgment on these prescribed claims as a matter of law.

E.      Plaintiff Has No Claim of Retaliation for Reporting OSHA Violations

Diaz claims that Superior retaliated against him because he complained to Superior of alleged Occupational Safety and Health Act ("OSHA") violations and he complained of exposure to hazardous materials to a third-party instructor who was conducting a training session for Superior employees.  Defendant's Exh. 1, Diaz deposition at pp. 115, 244-46, 249.  Diaz did not report any such violations to the federal Department of Labor or any other state or federal agency.  Id. at pp. 118, 248-49.  Superior contends that this claim fails because plaintiff lacks evidence of an essential element of a retaliation claim under federal law.

As previously noted, the Louisiana Whistleblower Statute applies only to violations of state law, and does not apply to violations of federal law.  Beard, 951 So. 2d at 1170.  Thus, even if Diaz could prove that any actual OSHA violation occurred and that he reported it to Superior within the one-year prescriptive period (and he has provided no evidence of either), he has no retaliation claim for such a violation under the Louisiana Whistleblower Statute as a matter of law.

Under federal law, OSHA prohibits retaliation against employees who report OSHA violations.  29 U.S.C. § 660(c)(1).  However, an employee may enforce this provision only by filing a complaint with the Secretary of Labor.  Id. § 660(c)(2).  The Secretary may then file a civil action in any appropriate United States district court to

-24-

restrain violations of this section and to obtain "appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."  Id.

Thus, OSHA "does not authorize a private cause of action for discriminatory retaliation." Mulvaney v. City of Rochester, No. 04-CV-6169T, 2004 WL 1660274, at *2 (W.D.N.Y. July 21, 2004) (emphasis added) (citing George v. Aztec Rental Ctr., Inc., 763 F.2d 184 (5th Cir. 1985); Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir. 1980); Smith v. E.I. Dupont de Nemours, 2004 U.S. Dist. Lexis 8014 (W.D.N.Y. Mar. 30, 2004); Fletcher v. United Parcel Serv., 155 F. Supp. 2d 954 (N.D. Ill. 2001)); accord Valdez v. Joy Techs., 29 F.3d 623, 1994 WL 395127, at *2 (5th Cir. 1994) (citation omitted).

Because 29 U.S.C. § 660(c) "does not provide a private right of action and remedy to Plaintiffs," this court lacks federal question jurisdiction over Diaz's claim under this statute.  Aranyosi v. Delchamps, Inc., No. 97-0251, 1997 WL 118389, at *1 (E.D. La. Mar. 14, 1997) (McNamara, J.); accord Dortch v. Memorial Herman Healthcare Sys.-Sw., 525 F. Supp. 2d 849, 859 (S.D. Tex. 2007); Mulvaney, 2004 WL 1660274, at *2.

Accordingly, Superior is entitled to summary judgment in its favor as a matter of law on plaintiff's claim, whether brought under state or federal law, of retaliation for reporting OSHA violations.

F.      <u>Plaintiff Produced No Evidence of Retaliation for Additional Violations</u>

Plaintiff vaguely alleges that he was wrongfully terminated because he complained of violations of the Homeland Security Act and of American Petroleum Institute ("API") regulations.  As previously noted, violations of federal law do not fall under the Louisiana Whistleblower Act, and plaintiff has cited no law providing that violations of the rules of a national trade association are subject to protection under any state or federal statute.

Aside from his failure to identify any legal basis for such retaliation claims, these claims must be dismissed because Diaz provides only conclusory, speculative allegations and fails to produce any competent evidence to support them.  He admitted that he did not complain to Superior or any outside agency of any such violations.  Defendant's Exh. 1, Diaz deposition at pp. 134, 136, 247.  If Superior did not receive or was not aware of any such complaints, obviously it could not have retaliated against him for such complaints.

Accordingly, Superior is entitled to summary judgment in its favor as a matter of law on plaintiff's claim of retaliation for reporting Homeland Security Act and/or API violations.

G.      <u>Plaintiff Had No Employment Contract with Superior</u>

Diaz alleges that Superior entered into an employment contract with him when Thibodaux allegedly agreed that he could return to lift boat work if his assignment to the shipyard did not work out or if, after a year, he chose to return to the fleet.  Defendant's

Exh. 1, Diaz deposition at p. 85.  Plaintiff claims that Superior breached that contract when it fired him without giving him the option of returning to work on its boats.  This claim fails because, even if Thibodaux made the promise, no contract was created.

Diaz, as "[t]he party demanding performance of a contract[,] has the burden of proving its existence."   State v. Parker, No. 2007-1224, 2008 WL 2329431, at *2 (La. App. 1st Cir. June 6, 2008) (citing La. Civ. Code art. 1927).  "A critical element for a valid [employment] contract is the parties' mutual consent or meeting of the minds." Robinson v. Apria Healthcare, Inc., 874 So.2d 418, 38,438 (La. App. 2d Cir. 2004) (Caraway, J., concurring in part and dissenting in part).

Plaintiff was an at-will employee whose employment could be terminated at any time.  "Louisiana is an employment at-will state, and as La. Civ. Code art. 2747 declares: 'A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing.'"  Brown v. Catalyst Recovery of La., Inc., 813 So. 2d 1156, 1166 (La. App. 3d Cir. 2002).

Diaz signed an "Acknowledgment of At-Will Status" form in March 2004.  This form stated that no Superior employee, other than the CEO, had authority to enter into an employment agreement and that any employment agreement must be clearly stated in writing and signed by the CEO.  Exh. 7 to Diaz deposition.  Diaz understood that his employment was at will, meaning that he "could be terminated at any time for any reason

or no reason." He never received anything that changed that status. Defendant's Exh. 1, Diaz deposition at p. 84. Plaintiff admitted that Thibodaux had no authority to make a promise to him that created a contract. He knew that only the CEO had such authority, and he admitted that the CEO never authorized an employment contract for him. Defendant's Exh. 1, Diaz deposition at pp. 84-87, 90.

Diaz has failed to produce any written contract signed by Superior's CEO or any other competent evidence that he entered into a valid employment contract with Superior. Because plaintiff has failed to carry his burden to prove the existence of a contract, Superior is entitled to summary judgment on his breach of contract claim.

H.    Plaintiff Has No Evidence of Restraint of Trade by Superior

Diaz claims that Superior violated federal prohibitions on restraint of trade by participating in price-fixing of lift boat day rates and agreeing with its competitors that they would not hire each other's employees. Record Doc. No. 1, Petition; Defendant's Exh. 1, Diaz deposition at pp. 120-21, 124-25.

> Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." In order to state a claim under section 1 of the Sherman Act, a plaintiff must show that the defendants "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." A necessary ingredient of any section 1 conspiracy is a showing of concerted action on the part of the defendants. To establish concerted action, the plaintiff must present "evidence that reasonably tends

to prove that the [defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective." . . . . "[A]t the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently."

Tunica Web Advertising v. Tunica Casino Operators Ass'n, Inc., 496 F.3d 403, 409 (5th Cir. 2007) (quotations, citations and footnote omitted).

Diaz testified that, after he left Superior, he was told by Butch Bazer, the Operations Manager at Aries Marine, that Bazer had a "handshake agreement" with Charlie Hardy, a vice president at Superior, that neither company would take applications from each other's employees unless the employees had been fired or had quit.  Diaz had no personal knowledge of any such agreement.  Defendant's Exh. 1, Diaz deposition at pp. 120-22, 127-28.  Superior's Operations Manager Bergeron testified that it is not Superior's practice or policy to "poach" employees from a competitor, but that if a competitor's employee came to Superior seeking a job, Bergeron would consider hiring that person.  Defendant's Exh. 2, Bergeron deposition at p. 102.

Plaintiff's testimony about what Bazer said to him or what Hardy allegedly said to Bazer is inadmissible hearsay.  Fed. R. Evid. 801, 802.  Diaz has not proffered any admissible evidence from Bazer, Hardy or anyone else to contradict Bergeron's sworn testimony that no such agreement existed.  In the absence of any admissible evidence of

concerted action among Superior and Aries Marine, plaintiff's claim based on the supposed handshake agreement fails.

As to plaintiff's price-fixing claim, Diaz testified that Hardy said at a meeting in January 2006 that Hardy had met with some of Superior's competitors, that Superior was going to raise the day rates that it charged its customers and that other companies had agreed to raise their rates as well. Defendant's Exh. 1, Diaz deposition at pp. 124-26. Again, Diaz's testimony contains inadmissible hearsay concerning what Hardy said. Bryan Wynn, Superior's Senior Director of Operations, denied that Superior engaged in any price-fixing. Defendant's Exh. 9, deposition of Bryan Wynn at p. 39. Because Diaz has proffered no competent summary judgment evidence to contradict Wynn's testimony, he cannot prove any concerted action by Superior and others to fix prices.

Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's restraint of trade claim.

I.     Plaintiff Has No Evidence of Conspiracy to Influence the Coast Guard

Diaz alleges that Superior conspired to influence the United States Coast Guard. He testified that he overheard Thibodaux tell Boudreaux that Thibodaux was going to try to play golf with a particular Coast Guard inspector and "try to talk to [the inspector] about maybe reducing some of the requirements that they put on this vessel that was being rebuilt." Plaintiff testified that Boudreaux responded that he did not think the inspector

-30-

could be swayed.  Diaz testified that, in his "opinion," this conversation was a conspiracy to influence the Coast Guard.  He did not know whether Thibodaux ever met with the inspector.  Defendant's Exh. 1, Diaz deposition at pp. 242-44.  Again, plaintiff's testimony about what Boudreaux and Thibodaux allegedly said to each other is inadmissible hearsay.

Thibodaux denied that he ever asked the Coast Guard inspector for any special favors or concessions concerning any vessel on which Thibodaux worked.  Defendant's Exh. 10, Thibodaux deposition at pp. 75-76.  This testimony is uncontradicted.

Plaintiff has produced no competent evidence to show that any conspiracy or any improper request to the Coast Guard occurred.  Accordingly, defendant is entitled to summary judgment on this claim as a matter of law.

J.      Plaintiff Has No Evidence of Securities Laws Violations by Defendant

Diaz testified that the website of defendant's parent company, Superior Energy Services, Inc., contains what he believes are false statements that were made to the Louisiana Secretary of State and the SEC.  Defendant's Exh. 1, Diaz deposition at pp. 100-04.  The court previously denied Diaz's attempt to amend his petition to add any of Superior's affiliated companies as a defendant.  Record Doc. No. 59.  Because Superior Energy Services, Inc. is not a defendant in this action, plaintiff's allegations of false statements by it are irrelevant.

Diaz has provided no evidence that the only defendant in this action, Superior Energy Services, L.L.C., has violated any securities laws.   Accordingly, defendant is entitled to summary judgment as a matter of law on this claim.

      K.    <u>Plaintiff Has No Qui Tam Claim in This Action</u>

Superior correctly argues that plaintiff does not have a qui tam claim in this action. The court previously denied Diaz's attempt to amend his petition to add a qui tam claim. Record Doc. No. 59.  Plaintiff acknowledges in his opposition memorandum that he has not brought a qui tam claim in this action.  Record Doc. No. 101, plaintiff's memorandum at p. 43.  Because Diaz has not asserted a qui tam claim, Superior's motion for summary judgment is dismissed as moot as to this claim.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **DISMISSED AS MOOT IN PART** as to plaintiff's non-existent qui tam claim.   **IT IS FURTHER ORDERED** that the remainder of defendant's motion for summary judgment is **GRANTED** and that all of plaintiff's claims are **DISMISSED**

**WITH PREJUDICE**, plaintiff to bear all costs of this proceeding.  Judgment will be

entered accordingly.


New Orleans, Louisiana, this __4th__ day of August, 2008.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE